UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

---

MICHAEL ANGELO BURNETT,

    Plaintiff,

v.                                                        Case No. 2:08-cv-292
                                                        HON. R. ALLAN EDGAR

PATRICIA CARUSO, et al.,

    Defendants.
_____/

MICHAEL ANGELO BURNETT,

    Plaintiff,

v.                                                          Case No. 2:09-cv-101
                                                        HON. R. ALLAN EDGAR

WILLIAM JONDREAU, et al.,

    Defendants.
_____/

MICHAEL ANGELO BURNETT,

    Plaintiff,

v.                                                          Case No. 2:09-cv-105
                                                        HON. R. ALLAN EDGAR

P. CHAPPELLE, et al.,

Defendants.
_____/

**OPINION**

## I. Facts

Plaintiff Michael Angelo Burnett, an inmate currently confined at the Chippewa Correctional Facility (URF), filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against several employees of the Michigan Department of Corrections (MDOC). Specifically, Defendants include Unknown Gill, Unknown Hyatt, D. G. West, Rick Wertanen, W. Jondreau, Linda Tribley, Unknown Morgan, L. Marshall, C. Charles, Patricia L. Caruso, T. Smith, James LeClaire, Gary Capello, Dean Velmer, T. Hill, J. Coppler, R. Sackett, G. McQuiggin, Unknown Betz, E. Jacobsen, R. Haataja, Unknown Perrish, Unknown Killiam, William Vertanen, Unknown Wuoka, Unknown Karpinen, and Unknown Heikkinen.[1]

Plaintiff's complaint alleges that beginning in July of 2006, while he was incarcerated at the Baraga Maximum Correctional Facility, staff at AMF controlled and tracked Plaintiff's movements in the security housing units. Plaintiff claims that staff incapacitates him before raping him and violating him anally and orally. In addition, staff humiliates him by making him swallow their bodily waste despite their knowledge

---

[1] Plaintiff also names W. Leutzow, Unknown Lampler, Unknown Tollefson, and B. Smith in his complaint. However, these individuals were never served. Therefore, they are not parties to this action.

that Plaintiff suffers from bacterial endocarditis. Plaintiff alleges that staff records and watches him while he is in his cell and while he bathes and defecates. Staff also racially and sexually harass Plaintiff and subject him to denial of food. Staff pressure Plaintiff to comply with their sexual demands and intimidate him with violence. Plaintiff claims that the Security Housing Unit Team broke his teeth, lacerated his hand, severely cut his lip, and wrote false disciplinary reports on Plaintiff for reporting the assaults. Plaintiff asserts that the physical assaults by staff have prevented him from writing legibly, intelligible legal papers and have resulted in the denial of access to the courts.

In Case Nos. 2:09-cv-101 and 2:09-cv-105, which have been consolidated with this case, Plaintiff claims that Defendants Terri Smith, J. Larson, P. Chappelle, Unknown Serano, J. Schaub, Unknown Nelson, Unknown Carmen, Unknown Levalle, Unknown Gravier, Unknown Coran, Unknown Lake, and Unknown Bowden controlled Plaintiff via electric shocks, forced him to consume radioactive substances, and gave him a life-threatening bacterial infection. In addition, Plaintiff claims that Defendants forced him to masturbate in front of them and violated him anally and orally. Finally, Plaintiff claims that Defendants interfered with his right of access to the courts. Plaintiff claims that he has complained to each supervisory Defendant, to no avail.

Plaintiff sues each Defendant in their individual capacity, except for Defendants Caruso and Jondreau, who are being sued in both their individual and official capacities. and is seeking both damages and equitable relief.

**II. Analysis**

    **A. Standard of Review**

Presently before the Court is the Defendants' Motion to Dismiss, pursuant to Fed. R. Civ. P. 12(b)(6), and/or Motion for Summary Judgment, pursuant to Fed. R. Civ. P. 56. Plaintiff has filed a response and the matter is ready for decision. Because both sides have asked that the Court consider evidentiary materials beyond the pleadings, the standards applicable to summary judgment apply. *See* Fed. R. Civ. P. 12(b).

Summary judgment is appropriate only if the moving party establishes that there is no genuine issue of material fact for trial and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). If the movant carries the burden of showing there is an absence of evidence to support a claim or defense, then the party opposing the motion must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. *Id.* at 324-25. The nonmoving party cannot rest

on its pleadings but must present "specific facts showing that there is a genuine issue for trial." *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)). The evidence must be viewed in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Thus, any direct evidence offered by the plaintiff in response to a summary judgment motion must be accepted as true. *Muhammad v. Close*, 379 F.3d 413, 416 (6th Cir. 2004) (*citing Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994)). However, a mere scintilla of evidence in support of the nonmovant's position will be insufficient. *Anderson*, 477 U.S. at 251-52. Ultimately, the court must determine whether there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252. *See also Leahy v. Trans Jones, Inc.*, 996 F.2d 136, 139 (6th Cir. 1993) (single affidavit, in presence of other evidence to the contrary, failed to present genuine issue of fact); *cf. Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1448 (6th Cir. 1993) (single affidavit concerning state of mind created factual issue).

**B. Failure to state a claim**

Defendants assert that Plaintiff's complaint should be dismissed as frivolous and failing to state a claim. With regard to Plaintiff's access to courts claims, Defendants state that Plaintiff failed to show that he suffered an actual injury to a non-frivolous legal claim. In *Bounds v. Smith*, 430 U.S. 817 (1977), the Supreme Court recognized a prisoner's fundamental right of access to the courts. While the right of access to the courts does not allow a State to prevent an inmate from bringing a grievance to court, it also does not require the State to enable a prisoner to discover

grievances or litigate effectively. *Lewis v. Casey*, 518 U.S. 343 (1996). Thus, *Bounds* did not create an abstract, free-standing right to a law library, litigation tools, or legal assistance. *Id.* at 351 (1996). Further, the right may be limited by legitimate penological goals, such as maintaining security and preventing fire or sanitation hazards. *See Acord v. Brown*, No. 91-1865, 1992 WL 58975 (6th Cir. March 26, 1992); *Hadix v. Johnson*, No. 86-1701, 1988 WL 24204 (6th Cir. March 17, 1988); *Wagner v. Rees*, No. 85-5637, 1985 WL 14025 (6th Cir. Nov. 8, 1985).

To state a claim, an inmate must show that any shortcomings in the library, litigation tools, or legal assistance caused actual injury in his pursuit of a legal claim. *Lewis*, 518 U.S. at 351; *Talley-Bey*, 168 F.3d at 886; *Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996); *Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996); *Walker v. Mintzes*, 771 F.2d 920, 932 (6th Cir. 1985). An inmate must make a specific claim that he was adversely affected or that the litigation was prejudiced. *Vandiver v. Niemi*, No. 94-1642, 1994 WL 677685, at *1 (6th Cir. Dec. 2, 1994). Particularly, an inmate cannot show injury when he still has access to his legal materials by request, *Kensu*, 87 F.3d at 175, when he fails to state how he is unable to replicate the confiscated documents, *Vandiver*, 1994 WL 677685, at *1, or when he could have received the material by complying with the limits on property, e.g., where he had the opportunity to select the items that he wanted to keep in his cell, or when he had an opportunity to purchase a new footlocker that could hold the property. *Carlton v. Fassbender*, No. 93-1116, 1993 WL 241459, at *2 (6th Cir. July 1, 1993).

Further, in order to state a viable claim for interference with his access to the courts, a plaintiff must show "actual injury." *Lewis v. Casey*, 518 U.S. 343, 349 (1996); *see also Talley-Bey v. Knebl*, 168 F.3d 884, 886 (6th Cir. 1999). The Supreme Court has strictly limited the types of cases for which there may be an actual injury:

> *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or

> collaterally, and in order to challenge the conditions of their
>
> confinement. Impairment of any other litigating capacity is
>
> simply one of the incidental (and perfectly constitutional)
>
> consequences of conviction and incarceration.

*Lewis*, 518 U.S. at 355. "Thus, a prisoner's right to access the courts extends to direct appeals, habeas corpus applications, and civil rights claims only." *Thaddeus-X v. Blatter*, 175 F.3d 378, 391 (6th Cir. 1999) (en banc). Moreover, the underlying action must have asserted a non-frivolous claim. *Lewis*, 518 U.S. at 353; *accord Hadix v. Johnson*, 182 F.3d 400, 405 (6th Cir. 1999) (*Lewis* changed actual injury to include requirement that action be non-frivolous).

Defendants contend that Plaintiff's bare allegation that a law suit was dismissed as the result of staff interference with his drafting of legal documents, without more, is insufficient to set forth an access to courts claim. In response to this assertion, Plaintiff states that Defendants damaged his primary writing hand with a security device. As a result, Plaintiff's handwriting was affected. Plaintiff attaches a copy of an order rejecting a pleading, dated June 3, 2008, in which the court stated:

> Documents are unsuitable for scanning, having been handwritten sideways on the paper in excessively oversized print, and are in otherwise improper format for filing with this court.

Plaintiff was advised that he could submit a corrected pleading for filing. (Plaintiff's Exhibit 3.)

As noted by Defendants, Plaintiff fails to state the nature of his rejected pleadings, or to explain why he was unable to later submit corrected pleadings. Therefore, Plaintiff's access to courts claim is properly dismissed.

Plaintiff also claims that prison staff wrote false disciplinary reports on him in retaliation for reporting the assaults by staff. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v.*

*Blatter*, 175 F.3d 378, 394 (6th Cir.1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Thaddeus-X*, 175 F.3d at 394. Moreover, Plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence. *See Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987); *Vega v. DeRobertis*, 598 F. Supp. 501, 506 (C.D. Ill. 1984), *aff'd*, 774 F.2d 1167 (7th Cir. 1985). "[A]lleging merely the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108. Conclusory allegations of retaliatory motive "with no concrete, relevant particulars" fail to raise a genuine issue of fact for trial. *Salstrom v. Sumner*, No. 91-15689, 1992 WL 72881, at *1 (9th Cir. Apr. 10, 1992); *see also Birdo v. Lewis*, No. 95-5693, 1996 WL 132148, at *1 (6th Cir. Mar. 21, 1996); *Fields v. Powell*, No. 94-1674, 1995 WL 35628, at *2 (6th Cir. Jan. 30, 1995); *Williams v. Bates*, No. 93-2045, 1994 WL 677670, at *3 (6th Cir. Dec. 2, 1994). As noted by Defendants, Plaintiff merely alleges that "staff" filed false misconduct reports on him in retaliation for reporting the assaults. Plaintiff has not alleged any specific facts, including who wrote the misconduct tickets, the disposition of those tickets, or any facts showing that they were in fact motivated by a desire to retaliate. Accordingly, Plaintiff's speculative allegation fails to state a claim.

Defendants state that they are entitled to dismissal of Plaintiff's Eighth Amendment claims because Plaintiff has failed to show that they were personally involved in the alleged misconduct. The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600-01 (6th Cir. 1998). The Eighth

Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954.

Defendants state that Plaintiff has failed to name any specific individual with regard to his claims of assault and deliberate indifference. Plaintiff attempts to rectify this in his second amended complaint (docket #105), Plaintiff states that the housing unit team (HUT) refers to Defendants Wertanen, Velmer, Hill, Jacobson, Charles, West, Haataja, Perrish, Killiam, Vertanen, Bettz, Wuoko, Karpinen, Hyatt, Heikkinen, Coppler, Morgan, LeClaire, Marshall, Sackett, and Smith, and that these Defendants were responsible for sexually molesting him both anally and orally, torturing him with electric shocks, and exposing him to radiation and bodily waste, all of which aggravated Plaintiff's staphylococcus endocarditis. Plaintiff states that the HUT members on the 11 p.m. to 7 a.m. shift broke his two upper front teeth while Plaintiff was asleep, and cut Plaintiff's lip. The HUT members on the 7 a.m. to 3 p.m. shift lacerated Plaintiff's hand. The HUT members on the 3 p.m. to 11 p.m. cut Plaintiff's lip deep enough to leave a permanent scar on Plaintiff's bottom lip. The court concludes that these allegations are sufficient to show personal involvement by Defendants Wertanen, Velmer, Hill, Jacobson, Charles, West, Haataja, Perrish, Killiam, Vertanen, Bettz, Wuoko, Karpinen, Hyatt, Heikkinen, Coppler, Morgan, LeClaire, Marshall, Sackett, and Smith.

However, Defendants also claim that Plaintiff's allegations are fanciful and irrational. The court notes that it is not bound to accept all factual allegations as true. *Id.* While the court cannot dismiss a case simply because the court finds the factual allegations to be improbable or unlikely, *Id.*, the court may dismiss a case as frivolous where the facts alleged rise to the level of the irrational or are wholly incredible, *Id.*; fanciful, *Neitzke v. Williams*, 490 U.S. 319, 325 (1989); fantastic, *Id.* at 328; or delusional. *Id.* As noted above, Plaintiff's claims that he was exposed to radiation, and that he has been electronically controlled and tracked via an "atmospheric radiological dispersal device." Plaintiff claims that the use of this system incapacitated him so that he could be assaulted and raped. Plaintiff fails to state any specific dates with regard to the alleged assaults, or to specifically name which Defendants were responsible for each incident. Rather, Plaintiff lumps them into one group, the "HUT." Plaintiff concedes that he has been evaluated by mental health, but asserts that the evaluation was not

legitimate. Plaintiff also concedes that there are no medical records related to the alleged rapes, and states that this is because Defendants have prevented him from obtaining medical assistance. As noted by Defendants, Plaintiff's claims are conclusory and vague. Moreover, the court concludes that the assertions made by Plaintiff in this case are irrational, wholly incredible, fanciful, fantastic, and delusional. Therefore, these claims are properly dismissed.

However, with regard to Defendants Smith, Jondreau, Leutzow, Tribley, Capello, McQuiggin, and Caruso, Plaintiff merely claims that he complained to them and that they failed to take corrective action. Liability under Section 1983 must be based on more than merely the right to control employees. *Polk Co. v. Dodson*, 454 U.S. 312, 325-26 (1981); *Monell v. New York City Department of Social Services*, 436 U.S. 658 (1978). Thus, Section 1983 liability cannot be premised upon mere allegations of *respondeat superior*. *Monell*, 436 U.S. at 691; *Polk*, 454 U.S. at 325. A party cannot be held liable under Section 1983 absent a showing that the party personally participated in, or otherwise authorized, approved or knowingly acquiesced in, the allegedly unconstitutional conduct. *See e.g. Leach v. Shelby Co. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989), *cert. denied*, 495 U.S. 932 (1990); *Hays v. Jefferson*, 668 F.2d 869, 874 (6th Cir.), *cert. denied*, 459 U.S. 833 (1982). *See also Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir.), *cert. denied* 469 U.S. 845 (1984).

Supervisory officials can be held liable for the acts of their subordinates only if plaintiff establishes that the supervisor failed to appropriately discharge his supervisory duties, and that this failure resulted in a denial or deprivation of plaintiff's federal rights. *See e.g. Leach*, 891 F.2d at 1246; *Hayes v. Vessey*, 777 F.2d 1149, 1154 (6th Cir. 1985). However, the failure of a supervisor to supervise, control or train the offending employee is not actionable absent a showing that the official implicitly encouraged, authorized, approved or knowingly acquiesced in, or in some other way directly participated in, the offensive conduct. *Leach*, 891 F.2d at 1246. Such a claim requires, at a minimum, that the official had knowledge of the offending employee's conduct at a time when the conduct could be prevented, or that such conduct was otherwise foreseeable or predictable. *See e.g. Gibson v. Foltz*, 963 F.2d 851, 854 (6th Cir. 1992). In addition, plaintiff must show that defendant had some duty or authority to act. *See e.g. Birrell v. Brown*, 867 F.2d 956, 959 (6th Cir. 1989) (lower level official not liable for shortcomings of building); *Ghandi v. Police Dept. of City of Detroit*, 747 F.2d 338, 351 (6th Cir. 1984) (mere presence at the scene is insufficient grounds to impose Section 1983 liability in the absence of a duty to act); *accord Hall v. Shipley*, 932

F.2d 1147 (6th Cir. 1991). In addition, merely bringing a problem to the attention of a supervisory official is not sufficient to impose such liability. *See Shelly v. Johnson*, 684 F. Supp. 941, 946 (W.D. Mich. 1987) (Hillman, C.J.), *aff'd* 849 F.2d 228 (6th Cir. 1988). Finally, supervisory liability claims cannot be based on simple negligence. *Leach*, 891 F.2d at 1246; *Weaver v. Toombs*, 756 F. Supp. 335, 337 (W.D. Mich. 1989), *aff'd* 915 F.2d 1574 (6th Cir. 1990).

Plaintiff has not alleged facts establishing that Defendants Smith, Jondreau, Leutzow, Tribley, Capello, McQuiggin, and Caruso were personally involved in the activity which forms the basis of his claim. The only roles that Defendants Smith, Jondreau, Leutzow, Tribley, Capello, McQuiggin, and Caruso had in this action involve the alleged failure to act. Defendants Smith, Jondreau, Leutzow, Tribley, Capello, McQuiggin, and Caruso cannot be liable for such conduct under § 1983. *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999), *cert. denied*, 530 U.S. 1264, 120 S. Ct. 2724 (2000). Accordingly, the Court concludes that Plaintiff's claims against Defendants Smith, Jondreau, Leutzow, Tribley, Capello, McQuiggin, and Caruso are properly dismissed for lack of personal involvement.

### C. Res Judicata

Defendants claim that Plaintiff's complaint should be dismissed pursuant to the doctrine of res judicata because Plaintiff has previously asserted identical claims in a number of cases filed in this court. The doctrine of claim preclusion, sometimes referred to as res judicata, provides that if an action results in a judgment on the merits, that judgment operates as an absolute bar to any subsequent action on the same cause between the same parties or their privies, with respect to every matter that was actually litigated in the first case, as well as every ground of recovery that might have been presented. *Black v. Ryder/P.I.E. Nationwide, Inc.*, 15 F.3d 573, 582 (6th Cir. 1994); see Kremer v. Chemical Const. Corp., 456 U.S. 461, 467 n.6 (1982); *see also Bowen v. Gundy*, No. 96-2327, 1997 WL 778505, at * 1 (6th Cir. Dec. 8, 1997). Claim preclusion operates to relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and by preventing inconsistent decisions, encourage reliance on adjudication. *Allen v. McCurry*, 449 U.S. 90, 94 ( 1980). In order to apply the doctrine of claim preclusion, the court must find that (1) the previous lawsuit ended in a final judgment on the merits ; (2) the previous lawsuit was between the same parties or their privies; and (3) the previous lawsuit involved the same claim or cause of action as the present case. *Allen, 449 U.S.* at 94; *accord Federated Dept Stores, Inc. v. Moitie*, 452 U.S. 394, 398 (1981).

Defendants state that in *Burnett v. Caruso, et al.*, No. 1:08-cv-168 (W.D. Mich., Jan. 5, 2009), Plaintiff alleged, as he alleges here, that Defendant McGahey and other AMF staff administered electrical shocks to him through radio controlled proton beams or some other unknown security device in order to incapacitate him just before entering his cell to brutally rape him. Plaintiff stated that the rapes caused him to suffer profuse bleeding, swelling, pain and confusion. Plaintiff alleged that he was denied medical treatment for the rapes and for his bacterial endocarditis. Plaintiff further alleged that he was exposed to ionized urine, semen, and blood, which was exposed to radiation, which caused him to suffer from a variety of medical problems. Plaintiff's assertions were found to be irrational, wholly incredible, fanciful, fantastic, and delusional. (Defendants' Exhibit B.)

In *Burnett v. Hill, et al.*, No. 2:09-cv-39 (W.D. Mich., Mar. 6, 2009), Plaintiff alleged that the high technology security system was being used by an Unknown Party to allow Defendants Hill, Lake, Healey and other Unknown Parties to sexually assault Plaintiff, as well as to assault him with bodily waste. Plaintiff also claimed that Defendants used the system to control and track Plaintiff's hand movement, thereby interfering with his ability to draft legal papers. Plaintiff's assertions were found to be delusional and his complaint was dismissed for failing to state a claim. (Defendants' Exhibit D.)

Defendants claim that because the allegations in this case are the same as those in *Burnett v. Caruso, et al.*, No. 1:08-cv-168 (W.D. Mich., Jan. 5, 2009) and *Burnett v. Hill, et al.*, No. 2:09-cv-39 (W.D. Mich., Mar. 6, 2009), this complaint is barred by the doctrine of res judicata. However, as noted above, res judicata applies where the previous lawsuit was between the same parties or their privies. Four of the Defendants in this case were also named in the previous cases, specifically Defendants Caruso, Jondreau, Lake and Hill. Therefore, Plaintiff's claims against Defendants Caruso, Jondreau and Hill are barred by the doctrine of res judicata.

**D. Summary judgment**

Finally, Defendants state that they are entitled to summary judgment in this case because Plaintiff is unable to prove any the claims asserted in his complaint. Defendants offer the affidavit of Defendant Tribley, in which she attests that the only cells with recording capability are observation cells and that Plaintiff has never been housed in such a cell at AMF. In addition, Defendant Tribley attests that the various security devices utilized by staff at AMF are not capable of being used in any manner which would cause mental or physical injury. (Defendants' Exhibit G, ¶¶ 5 and 8.) In

addition, Defendant Tribley states that while Plaintiff was housed at AMF, he did not have his teeth broken, his hand lacerated, or his lip cut. (Defendants' Exhibit G, ¶ 6.)

According to Plaintiff's medical records, he was seen by medical personnel on February 21, 2006, by Physician's Assistant Richard Miller. In the progress note, Miller states that Plaintiff was complaining of being raped at the Marquette Branch Prison in September of 2005, and that Plaintiff asserted he had injuries / scar tissue as a result. Miller indicated that he would send Plaintiff to the Munising Emergency Room to be examined by a doctor. Miller also noted that he would discuss the accusation with Captain Immel, so that it could be reported to the proper authorities. (Defendants Exhibit H, Physical Exam note by Miller, dated February 21, 2006.)

In addition, Plaintiff was seen by Psychologist Gary S. Kilpela, Phd, on April 7, 2008, after he smashed his television and was holding a sharp piece of glass, in an effort to get custody staff because he believed that they had been trying to kill him with gamma rays. Plaintiff was diagnosed with paranoid schizophrenia and antisocial personality disorder. (Defendants Exhibit H, Mental Health Progress Note by Kilpela, dated April 7, 2008.) The medical record fails to reveal the existence of any injuries related to an assault which occurred while Plaintiff was confined at AMF. Rather, the record shows that Plaintiff receives ongoing treatment for acid reflux disease. The record also shows that before he was transferred to AMF, he reported to medical staff at LMF that he wanted a medical exemption from strenuous work due to a heart murmur as the result of chemical and bacteria exposure. (Defendants' Exhibit H, June 20, 2006, Notes by Sandra A. Monroe, R.N.) Plaintiff was seen by Psychologist Paul A. Eyke, who noted that Plaintiff was somewhat illogical. Plaintiff was complaining that the MDOC was harassing him with the PPD system and intercom system, and appeared to be suspicious of staff due to his allegation of being sexually assaulted while at MBP. (Defendants' Exhibit H, Eyke Mental Health Progress Note, dated June 21, 2006.) Plaintiff was placed in segregation following an assault on staff on June 21, 2006. On June 22, 2006, Plaintiff was seen by Dr. Fernando E. Frontera, M.D., who noted that Plaintiff was suffering from superficial skin bruises on his right shoulder, right ankle, and left wrist, as well as a right side parietal head lump. However, Plaintiff displayed no neurological deficits. (Defendants' Exhibit H, Eyke's Mental Health Progress Note and Frontera's Medical Note, both dated June 22, 2006.)

Plaintiff was transferred to AMF on July 5, 2006, and he was enrolled in the Gastrointestinal Chronic Care Clinic. Plaintiff also had regular mental health contacts as an administrative segregation inmate. On October 19, 2006, he reported to

mental health staff that the PPD system and infrared rays had resulted in minor surface burns on his skin, although no burns were observed. (Defendants' Exhibit H, Mental Health Progress Note by Thomas Osier.) On May 2, 2007, Plaintiff told the psychologist that he had medical issues caused by radio waves. (Defendants' Exhibit H, Mental Health Progress Note by Gary S. Kilpela, Phd.) Plaintiff reported vision problems due to a radio controlled beam on August 27, 2007. (Defendants' Exhibit H, Mental Health Progress Note by Gary S. Kilpela, Phd.)

As noted by Defendants, Plaintiff filed this lawsuit on December 11, 2008. On February 5, 2009, Plaintiff reported that he had been sexually assaulted on January 30, 2009. (Defendants' Exhibit H, Progress Note by Defendant Hill.) However, Plaintiff refused a medical callout for his complaint of sexual assault on February 5, 2009, and again on February 6, 2009. (Defendants' Exhibit H, Notes by Glen A. Richards, R.N., and Howard V. Tyree, P.A.) The court concludes that all of the evidence in this case supports a finding that Plaintiff is suffering from delusions, and that he has been treated appropriately for both his medical and mental health issues. Plaintiff's medical record does not support his claim that he was assaulted, or otherwise mistreated by the Defendants. Plaintiff has failed to come forward with any evidence showing that there is a genuine issue of material fact with regard to his claims against Defendants. Therefore, Defendants are entitled to summary judgment.

### III. Conclusion

In light of the foregoing, the court concludes that plaintiff has failed to sustain his burden of proof in response to the motion to dismiss and / or for summary judgment filed by Defendants. Accordingly, the court will grant Defendants' Motion for Dismissal and / or Summary Judgment (docket #78). In addition, the court concludes that Plaintiff's action is properly dismissed in its entirety.

Furthermore, Plaintiff's pending motions to order DNA testing, to produce, to continue, to strike, and for writ of mandamus (docket #58, #89, #90, #92, and #113) are DENIED as moot.

A Judgment consistent with this Opinion will be entered.

Dated: 3/18/2010        /s/ R. Allan Edgar
                        R. ALLAN EDGAR
                        UNITED STATES DISTRICT JUDGE